UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| JAMES C. RENNICK SR. and MICHELE MALVERTY,<br><br>       Plaintiffs,<br><br>  vs.<br><br>EQUIFAX INFORMATION SERVICES LLC,<br><br>       Defendant. | Case No.: 8:17-cv-01617-JDW-AAS |

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, James C. Rennick Sr. ("Rennick") and Michele Malverty ("Malverty"), by and through undersigned counsel, hereby allege:

## PRELIMINARY STATEMENT

1. This is an action for damages arising from Defendant's willful and reckless conduct concerning its erroneous credit reportings on Plaintiff Rennick's credit report.

## JURSIDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1367.

3. Venue is proper in this district under 28 U.S.C §1391(b)

1

## PARTIES

4. Plaintiff James C. Rennick Sr. is a natural person, who at all relevant times has resided in Spring Hill, Florida.

5. Plaintiff Michele Malverty is a natural person, who at all relevant times has resided in Spring Hill, Florida.

6. Defendant Equifax Information Services, LLC. ("Equifax") is a business entity that regularly conducts business in Florida with its principal place of business as 1550 Peachtree Street NW, Atlanta, Georgia 30309. Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f) and engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681 a(d), to third parties.

## FACTUAL STATEMENT

7. Plaintiff Rennick is the husband of Ms. Angela Rennick, who is now deceased.

8. Plaintiff Malverty is the daughter of Ms. Angela Rennick, who is now deceased.

9. Ms. Angela Rennick was suffering from Stage IV lung, kidney, bone and brain cancer prior to her death and had significant limitations on her activities and abilities.

10. Plaintiff Rennick suffers from a heart condition which limits his activities and abilities.

11. Due to Ms. Rennick's illnesses and Plaintiff Rennick's condition, the Rennicks wanted to make renovations to their home to accommodate their health needs, and in order to enjoy their home to the fullest before Mrs. Rennick passed away.

12. The Rennicks sought to take a home equity loan in order to make the necessary repairs to their home so that Mrs. Rennick would know that her husband would be taken care of after

her passing and so Mr. Rennick could live comfortably. They wanted some changes to their kitchen and bathroom to accommodate Mr. and Mrs. Rennick's needs, an air conditioner on the 3rd floor so that Mrs. Rennick could breathe in the heat and a lanai, a screened-in porch area, so Ms. Rennick could enjoy the outdoors, despite her extreme allergy to the bugs in the area, during her final days.

13. The money from the home equity loan would also provide the needed funds to pay for Mrs. Rennick's anticipated funeral expenses, providing piece of mind to Mr. and Mrs. Rennick, as well as Plaintiff Malverty.

14. To accomplish these goals, Rennick and Malverty approached a mortgage broker on or about January 2017 to take out a home equity line of credit.

15. The broker pulled Rennick's credit to determine his eligibility. Equifax's credit report reflected that Mr. Rennick was deceased. Accordingly, the broker informed Mr. Rennick that he could not obtain a loan under these circumstances.

16. The Rennicks and Malverty were shocked and outraged at the discovery that Mr. Rennick was being reported as deceased, especially in light of Ms. Rennick's illness.

17. Immediately, thereafter, Plaintiff Rennick, with the help of Plaintiff Malverty proceeded to call Equifax.

18. Equifax informed Plaintiff Rennick that to prove he was alive, he would need a letter from the Social Security Administration (SSA).

19. Plaintiffs Malverty and Rennick immediately proceeded to the SSA, obtained the letter, and sent it to Equifax. Despite Rennick's dispute, Equifax failed to remove the deceased notation.

20. Shortly thereafter, in response to a second dispute, Equifax removed the deceased notation from Plaintiff's credit report.

21. Thereafter, on or about February 2017, Plaintiff Rennick returned to the mortgage broker to obtain a loan. The broker again declined to give Rennick a loan. This time the broker found that Rennick's credit report erroneously showed that Rennick owed another mortgage to M&T Bank, a loan with a large balance and delinquent payments.

22. Plaintiff Rennick and Plaintiff Malverty spent the next few months calling Equifax customer service representatives, begging them to remove the erroneous mortgage, to no avail. Despite being advised that time was of the essence given Mrs. Rennick's health condition, and the stress being caused upon each of Mrs. Rennick, Mr. Rennick, and Malverty, Equifax representatives did not assist Plaintiffs in their attempt to clear Mr. Rennick's credit report.

23. In fact, Rennick has never received any response from Equifax concerning any of the disputes complained of to Equifax.

24. Believing that perhaps the credit bureaus would take better care of their own customers, Plaintiff Malverty signed Plaintiff Rennick up for subscription services with Equifax. However, even this did not help, as Equifax refused to remove the erroneous mortgage despite Rennick being an Equifax customer.

25. Plaintiffs Malverty and Rennick eventually reached out to M&T Bank directly. The bank explicitly stated that Equifax must have mixed Rennick's credit file with that of another consumer with a similar social security number to Rennick. Upon information and belief, M&T then called Equifax on Rennick's behalf stating that he did not have an M&T mortgage, and the trade line should be removed from his report. M&T also provided Rennick with a letter evidencing that he did not have an M&T mortgage, and that his file was being mixed with another consumer that had a similar social security number.

26. Once Plaintiffs received the letter from M&T Bank, they made additional calls to Equifax demanding they fix the error. Equifax instructed Plaintiff to fax in the evidence that the

mortgage did not belong to Rennick. Thereafter, Plaintiff's sent at least four (4) faxes to Equifax disputing the mortgage and providing proof from the furnisher, M&T Bank, that Equifax had made an error.

27. Despite the calls from M&T Bank and the Plaintiffs, as well as being provided written proof of their error, Equifax refused to investigate the disputes and continued reporting the erroneous information on Plaintiff Rennick's credit report.

28. At all relevant times, Defendant Equifax had a duty to follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties regarding Plaintiff

29. Defendant Equifax was provided with concrete proof that the information they were reporting was in error, making Defendant's actions towards Plaintiff's Rennick and Malverty willful and with malice. The proof given to Equifax from M&T Bank provided serious doubts regarding the truth of information Equifax was publishing on Plaintiff Rennick's credit report and yet Equifax intentionally continued reporting the erroneous mortgage, despite Plaintiffs efforts to resolve the issues. Further, Equifax was repeatedly warned of the effect its reckless and willful conduct was having on Plaintiffs, and would continue to have.

30. In June 2017, Mrs. Rennick passed away. Due to Equifax's reckless and outrageous conduct, Rennick was unable to obtain the home equity line of credit and was unable to make the changes needed to keep Mrs. Rennick comfortable during her last days. Plaintiffs were unable to provide her the peace of mind concerning the means for her final expenses, that her husband would be cared for, and that her husband would not have additional financial worries in her absence. Finally, and most importantly, Plaintiffs were unable to pay for Mrs. Rennick's funeral expenses. Due to their lack of funds, instead of laying their wife and

5

mother to rest as they imagined, and as was their family custom, **Plaintiffs were forced to cremate Mrs. Rennick**, as the most inexpensive way of dealing with her remains.

31. To date, Equifax has not removed the erroneous mortgage from Rennick's credit report, continuously preventing him from obtaining a loan.

32. Defendant Equifax knew or should have known that its willful, malicious, negligent and reckless conduct would result in an inability for Rennick to obtain any line of credit.

33. As a direct and proximate cause of the above mentioned actions by Defendant, Plaintiffs Rennick and Malverty suffered severe mental anguish, inconvenience, loss of income, insomnia, distraction, anger, short temper, disappointment, disillusionment, frustration, anxiety, hopelessness, nervousness, loss of appetite, and concern for the future.

34. As a direct and proximate cause of Equifax's willful and outrageous conduct, Mr. Rennick has suffered and continues to suffer complications to his health due to the worsening of his heart condition. Instead of spending quality time with Mrs. Rennick during her final days, Plaintiff Rennick's time was spent worrying about obtaining a loan and hopelessly attempting to resolve issues with his credit.

35. As a direct and proximate cause of Equifax's willful and outrageous conduct, Plaintiff Malverty has had to spend considerable time helping her father to resolve these issues, causing physical problems including an increase in blood pressure, sleeplessness, anxiety and loss of appetite. Despite doing all she could, and making every effort to fix her father's credit, Ms. Malverty could not resolve the issue causing significant stress and turmoil to her family. Malverty has been present throughout all of the issues with Equifax and watched first-hand the effects it had on her mother and father. Additionally, instead of spending quality time with her mother during her final days, Plaintiff Malverty was forced to be on

the phone trying to resolve the issues with her father's credit so that she could ease the burden on her parents.

## COUNT I
## VIOLATION OF THE FAIR CREDIT REPORTING ACT

36. Rennick repeats, realleges, and reassert the allegations contained in paragraphs 1-35 above and incorporates them as if specifically set forth at length herein.

37. Defendant Equifax prepared, compiled, issued, assembled, transferred, published and otherwise reproduced consumer reports regarding Plaintiff Rennick as that term is used and defined under 15 U.S.C. § 1681a.

38. Equifax negligently and willfully failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to Plaintiff, in violation of 15 U.S.C. § 1681e(b).

39. Equifax negligently and willfully failed to investigate Rennick's dispute in violation of 15 U.S.C. § 1681i. Had Equifax conducted any investigation, it would have easily uncovered that the information it was reporting on Rennick's report was not his.

40. As a direct and proximate cause of Equifax's failure to perform its duties under the FCRA, Rennick has suffered actual damages.

41. Equifax's conduct, action and inaction was willful and with malice, rendering each liable for actual and statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Equifax was negligent, entitling Rennick to recover actual damages under 15 U.S.C. § 1681o.

WHEREFORE, Rennick prays that this court grant him a judgment against Equifax, for the greater of statutory or actual damages, plus punitive damages, costs, interest, and attorney's fees.

**COUNT II**
**INTENTIONAL INFLICATION OF EMOTIONAL DISTRESS**

42. Plaintiffs repeat, reallege, and reassert the allegations contained in paragraphs 1-35 above and incorporates them as if specifically set forth at length herein.

43. Defendant Equifax's actions towards Plaintiffs were intentional and/or reckless.

44. Defendant Equifax knew or should have known that given the circumstances of Mrs. Rennick's impending death, its blatant disregard of the proof provided by Plaintiffs to clear any erroneous trade lines from Plaintiff Rennick's credit report would cause Plaintiffs emotional distress.

45. Defendant Equifax knew or should have known that given the circumstances of Mrs. Rennick's impending death, its blatant disregard of the proof provided by Plaintiffs to clear any erroneous trade lines from Plaintiff Rennick's credit report would cause Plaintiffs emotional distress.

46. Defendant Equifax's conduct was extreme and outrageous, going beyond all bounds of decency so as to be deemed utterly intolerable in a civilized community, by failing to address the Plaintiffs' disputes when presented with clear proof of their error, while Mrs. Rennick lay dying.

47. Defendant Equifax's conduct was the proximate cause of Plaintiffs Rennick and Malverty severe and ongoing emotional distress.

WHEREFORE, Rennick and Malverty pray that this court grant them a judgment against Equifax, for the greater of statutory or actual damages, plus punitive damages pursuant to Fla. Stat. § 768.72 and in accordance with the Court's finding of a reasonable evidentiary basis for same, in an amount to be determined at trial.

## COUNT III
## INVASION OF PRIVACY

48. Plaintiffs repeat, reallege, and reassert the allegations contained in paragraphs 1-35 above and incorporates them as if specifically set forth at length herein.

49. Defendant Equifax intentionally or negligently intruded upon the seclusion and solitude of Plaintiffs and their affairs by providing and publishing credit reports on behalf of Plaintiff Rennick to third parties that Defendant Equifax knew to be false, and which contained private facts.

50. The intrusion by Defendant Equifax was highly offensive.

51. The privacy of Plaintiff Rennick was violated.

52. Defendant Equifax's offensive intrusion caused Plaintiffs physical and emotional harm. Further, the credit reports are not of public concern.

WHEREFORE, Rennick and Malverty pray that this court grant them a judgment against Equifax, for the greater of statutory or actual damages, plus punitive damages pursuant to Fla. Stat. § 768.72 and in accordance with the Court's finding of a reasonable evidentiary basis for same, in an amount to be determined at trial.

## COUNT IV
## NEGLIGENCE

53. Plaintiffs repeat, reallege, and reassert the allegations contained in paragraphs 1-35 above and incorporates them as if specifically set forth at length herein.

54. Defendant Equifax owed a duty to Rennick to act with reasonable care and follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties regarding Plaintiff Rennick.

55. Defendant Equifax was repeatedly informed by Malverty and Rennick of the effect its reckless and outrageous conduct was imposing upon Malverty, Mr. Rennick, and Mrs. Rennick bringing Malverty within the zone of danger of Equifax's conduct.

56. Defendant Equifax breached its duty to Plaintiffs Rennick and Malverty and was negligent in one or more of the following ways, but not limited thereto:

    a. Failing to follow reasonable procedures to assure the maximum possible accuracy of their reports.

    b. Failing to correct erroneous information about Plaintiff Rennick after repeated and reasonable requests.

    c. Commingling information about Plaintiff and another unrelated individual.

    d. Failing to promptly and adequately investigate information that Plaintiff disputed or the Defendants otherwise had notice was inaccurate.

    e. Failing to take adequate steps to verify information concerning Plaintiff and/or Plaintiff's alleged debts that Defendant had reason to believe was not accurate before placing it on Defendant's reports.

57. An ordinary consumer reporting agency, in the same or similar circumstances, would not have acted the way Equifax did in dealing with Plaintiffs.

58. Defendant Equifax knew or should have known that given the circumstances of Mrs. Rennick's impending death, its blatant disregard of the proof provided by Plaintiffs to clear any erroneous trade lines from Plaintiff Rennick's credit report would cause injury to Plaintiffs.

59. As a direct and legal result of Defendant's wrongful acts, Plaintiffs have suffered and will continue to suffer significant pain and suffering, physical injury, extreme and severe mental anguish and emotional distress.

WHEREFORE, Plaintiffs Rennick and Malverty pray that this Court grant them a judgment for compensatory damages against Defendant Equifax in an amount to be determined at trial.

## COUNT V
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

60. Plaintiffs repeat, reallege, and reassert the allegations contained in paragraphs 1-35 above and incorporates them as if specifically set forth at length herein.

61. Defendant Equifax's negligent conduct caused severe emotional distress to Plaintiffs

62. Defendant Equifax knew or should have known that its negligent conduct would cause Plaintiffs emotional harm.

63. Plaintiffs were injured by the actions of Equifax.

64. Plaintiffs were within the zone of danger as they both interacted with Equifax in attempting to resolve the ongoing issues with Plaintiff Rennick's credit report, and Equifax was informed of the effect it would have upon both of them.

65. Alternatively, Plaintiff Malverty was a bystander to the negligent infliction of emotional distress on her father as she saw the effect it had on him to be unable to clear his credit report of erroneous trade lines and obtain the funds to keep his wife comfortable in her final days. She was concerned that the stress and trauma of the events would cause Plaintiff Rennick's already weak heart to give out completely.  She also experienced firsthand the pain and agony involved with being unable to bury her mother and being forced to choose cremation as the only alternative.

WHEREFORE, Plaintiffs Rennick and Malverty pray that this court grant them a judgment against Equifax, for the greater of statutory or actual damages, plus punitive damages pursuant to

Fla. Stat. § 768.72 and in accordance with the Court's finding of a reasonable evidentiary basis for the same, in an amount to be determined at trial.

## COUNT VI
## DEFAMATION

66. Plaintiffs repeat, reallege, and reassert the allegations contained in paragraphs 1-35 above and incorporates them as if specifically set forth at length herein.

67. Defendant Equifax made a false and defamatory statement by including erroneous trade lines of delinquent accounts belonging to someone else on Plaintiff Rennick's credit report.

68. Defendant Equifax made an unprivileged publication of Plaintiff Rennick's erroneous credit report to third party lenders, creating the assumption that Plaintiff Rennick was delinquent on his debts, did not pay his bills and was not a trustworthy party to lend money to.

69. As a result of said defamation, Plaintiffs Rennick and Malvery were damaged.


WHEREFORE, Rennick and Malverty pray that this court grant them a judgment against Equifax, for the greater of statutory or actual damages, plus punitive damages pursuant to Fla. Stat. § 768.72 and in accordance with the Court's finding of a reasonable evidentiary basis for the same, in an amount to be determined at trial.

## COUNT VII
## GROSS NEGLIGENCE

70. Plaintiffs repeat, reallege, and reassert the allegations contained in paragraphs 1-35 above and incorporates them as if specifically set forth at length herein.

71. Defendant's negligent conduct towards Plaintiffs showed a conscious disregard or indifference to the rights of Plaintiffs such that it constituted gross negligence.

WHEREFORE, Plaintiffs Rennick and Malverty pray that this court grant them a judgment against Equifax, for the greater of statutory or actual damages, plus punitive damages pursuant to Fla. Stat. § 768.72 and in accordance with the Court's finding of a reasonable evidentiary basis for the same, in an amount to be determined at trial.

## JURY TRIAL DEMAND

72. Plaintiffs demand a jury trial on all issues so triable.

Dated this 7th of July, 2017

        Respectfully Submitted,

        MATTHEW FORNARO, P.A.
        11555 Heron Bay Boulevard
        Suite 200
        Coral Springs, Florida 33076
        Telephone:  (954) 324-3651
        Facsimile:   (954) 248-2099
By: /S/ Matthew Fornaro
        Matthew Fornaro, Esquire
        Florida Bar No.: 650641
        Email: mfornaro@fornarolegal.com
        Trial Counsel for Plaintiffs