**MICHELE MALVERTY, as successor-in-interest of JAMES C. RENNICK, Sr.,**

      **Plaintiff,**

**v.**                                        **Case No: 8:17-CV-1617-T-27AEP**

**EQUIFAX INFORMATION SERVICES, LLC,**

      **Defendant.**

_____/

## ORDER

**BEFORE THE COURT** are Plaintiff's motion to exclude the expert testimony of Dr. Stephanie Sarkis (Dkt. 111), and Defendant's motions to exclude the expert testimony of Evan Hendricks (Dkt. 113), Phillip Baumann (Dkt. 114), and Stephen Flatow (Dkt. 115). Upon consideration, the motion to exclude Dr. Sarkis is **DENIED** as moot. (Dkt. 111). The motions to exclude Hendricks and Flatow are **GRANTED in part** and **DENIED in part**. (Dkt. 113, 115). The motion to exclude Baumann is **DENIED**. (Dkt. 114).

## BACKGROUND

Orders on a motion to dismiss and for summary judgment outline the facts. (Dkts. 135, 163). In short, this is an FCRA case against Equifax, a consumer reporting agency, which combined James Rennick's credit file with another individual's. That merger allegedly damaged Rennick, including the inability to obtain a home or car loan. By their respective motions, the parties seek to exclude or limit the testimony of some expert witnesses in the case.

**STANDARD**

Before expert testimony can be admitted under Rule 702, Fed. R. Evid., the proffered testimony must be screened to ensure it is relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). Expert testimony is admitted when (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusion is sufficiently reliable;[1] and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). In determining whether the proffered testimony is reliable, the circumstances of the case are considered. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150-51 (1999). The party seeking to admit expert testimony must establish its admissibility by a preponderance of the evidence. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).

**DISCUSSION**

I. <u>Stephanie Sarkis</u>

Equifax retained Dr. Sarkis as a damages expert to rebut Malverty's expert, Dr. Phillip Goldstein, who opined that Malverty suffered harm as a result of Equifax's conduct. (Dkt. 119 at 1). All of Malverty's individual claims have been dismissed, and any damages she may have sustained are therefore irrelevant. Accordingly, Malverty's motion directed to Dr. Sarkis' testimony is due to be denied as moot.

---

[1] A preliminary assessment must be made of "whether the reasoning or methodology underlying expert testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592. In making this assessment, courts may consider (1) whether a theory or technique can be or has been tested, (2) whether the theory or technique has been subjected to peer review and publication, and (3) the general acceptance in the scientific community. *Id.* at 593-95.

II. Evan Hendricks

Hendricks is a consumer privacy advocate who has testified as an expert in a number of cases. (Dkt. 120-1 at 36-49). Equifax argues he should not be allowed to testify on the following matters: (1) Rennick's damages; (2) Equifax's state of mind; (3) legal opinions; (4) prior litigation; and (5) consent decrees and "Operation Busy Signal." (Dkt. 113 at 1).

1. *Damages*

Although Hendricks acknowledges "most, if not all, of the testimony regarding [Rennick's] specific actual damages will come from fact witnesses," he proposes to testify about "Problems Known & Common To Victims of Chronic Credit Report Inaccuracy." (Dkt. 120-1 at 12-13). While some courts have allowed such testimony, most have not. (Dkt. 113 at 4-5) (collecting cases); *see also Valenzuela v. Equifax Info. Servs. LLC*, No. CV-13-02259-PHX-DLR, 2015 WL 6811585, at *3 (D. Ariz. Nov. 6, 2015) ("Hendricks is not qualified to address physical, emotional, or economic effects of an inaccurate credit report, or to estimate the value of expended time and energy to correct errors . . . in addition to loss of time and energy, loss of opportunity."); *Anderson v. Equifax Info. Servs., LLC*, No. 2:16-CV-2038-JAR, 2018 WL 1542322, at *5 (D. Kan. Mar. 29, 2018) ("[Hendricks'] opinions regarding Plaintiff's damages amount to little more than speculation as to the injuries Plaintiff incurred.").

I agree with the reasoning of the courts that have excluded Hendricks' testimony on damages. There is no indication that he ever met Rennick, and any opinion on whether Equifax caused Rennick emotional distress would therefore be speculative. Moreover, any opinion about the types of damages that are common to plaintiffs in comparable circumstances would not assist the jury, as it will be instructed on the proper measure of damages. This part of the motion is therefore due to be granted.

### 2. *Equifax's State of Mind*

Equifax next challenges Hendricks' opinion about its motive, knowledge, and intent. Hendricks testified in another case, for example, that Equifax "had no intention of changing its routine practices and procedures because Equifax was '. . .very satisfied with the way its system works.'" (Dkt. 113-1 at 18). He further speculates about what Equifax thinks, knows, prefers, and intends. (Id. at 9, 13, 15, 18). Malverty responds that Hendricks is a leading expert on consumer reporting agencies and has reviewed numerous depositions and internal records, which qualifies him to testify on these matters. (Dkt. 120 at 5-6). But this is not sufficient to establish that his opinion is based on a reliable methodology. *See*, *e.g.*, *Anderson*, 2018 WL 1542322, at *5 ("Because the Court finds Hendricks's opinions unreliable on these topics, the Court grants Defendant's motion as it relates to testimony regarding Defendant's knowledge, intentions, or state of mind."); *see also Valenzuela*, 2015 WL 6811585, at *3. Nor would the testimony assist the jury, which is capable of evaluating state of mind on its own. *See, e.g.*, *Siring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon Univ.*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013) (collecting cases). This part of the motion is therefore due to be granted.

### 3. *Legal Opinions*

Equifax challenges Hendricks' statements that may constitute a legal conclusion, such as "Equifax's procedures were not adequate for assuring accuracy." (Dkt. 113-1 at 3). Malverty responds that the purported testimony falls short of a legal opinion addressing an ultimate issue for the jury. (Dkt. 120 at 11).

An expert witness cannot "merely tell the jury what result to reach" or testify to the "legal implications of conduct; the court must be the jury's only source of law." *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) (citations omitted). And an expert is not

permitted to offer legal conclusions. *Id.*

Malverty must show that Equifax failed to follow reasonable procedures to ensure the maximum possible accuracy of Rennick's consumer report, and that it failed to respond or conduct a reasonable reinvestigation of the disputed items. *See Lazarre v. JPMorgan Chase Bank, N.A.*, 780 F. Supp. 2d 1320, 1328 (S.D. Fla. 2011). Hendricks is allowed to testify about what additional measures Equifax could have taken to ensure the accuracy of Rennick's consumer report, both prior to and following the disputes. This could include whether Equifax's "procedures match industry standards if he dissects the basis for his knowledge of industry standards, explains how he applied his experience to the facts and how such application yields his opinion." *Williams v. First Advantage LNS Screening Sols. Inc.*, No. 1:13cv222, 2015 WL 9690018, at *4 (N.D. Fla. Mar. 31, 2015); *see also Anderson,* 2018 WL 1542322, at *6.

He may not, however, testify about whether Equifax's existing procedures or conduct were unreasonable, reckless, inadequate, or offer any other legal conclusion. *See, e.g.*, *Anderson*, 2018 WL 1542322, at *6 ("Hendricks must avoid expressing ultimate legal conclusions regarding the reasonableness of Defendant's procedures for ensuring maximum possible accuracy and conducting reinvestigations of credit report disputes."); *Zabriskie v. Fed. Nat'l Mortg. Ass'n*, No. CV-13-02260-PHX-SRB, 2016 WL 3653512, at *2 (D. Ariz. Apr. 22, 2016) (excluding Hendricks' testimony about whether procedures are "unreasonable" under the FCRA); *McDonough v. JPMorgan Chase Bank, N.A.*, No. 4:15-cv-617, 2016 WL 4944099, at *3 (E.D. Mo. Sept. 16, 2016) (excluding any opinions as to whether defendant's actions "were unreasonable, unreliable, inadequate, negligent, willful, or in any other manner violative of the FCRA"). Accordingly, this part of the motion is due to be granted in part and denied in part.

4. *Prior Litigation*

Equifax challenges Hendricks' proposed testimony of prior cases as irrelevant and prejudicial under Rule 403 of the Federal Rules of Evidence. (Dkt. 113 at 9-10). This prior litigation includes cases of identity theft and mixed-up files. (Dkt. 113-1 at 17-22). In response, Malverty points to *Barnett v. JP Morgan Chase Bank*, No. 1:12-cv-1745-VEH, 2014 WL 197685, at *4 (N.D. Ala. Jan. 16, 2014), which allowed similar testimony. Alternatively, Malverty argues that because there is a dispute over the relevance of the prior cases, it is appropriate to defer ruling until the record is more fully developed at trial. *See, e.g.*, *Ma v. Equifax Info. Servs., LLC*, 288 F. Supp. 3d 1360, 1368 (N.D. Ga. 2017).

The reasoning of cases like *Anderson*, 2018 WL 1542322, at *7, and *Valenzuela*, 2015 WL 6811585, at *3, is persuasive. Testimony about prior cases is not relevant, and is likely to confuse the jury. Even if arguably relevant, Hendricks' proposed testimony about those other cases does not require any specialized knowledge, skill, or experience, and therefore would not be particularly helpful to the jury. Accordingly, Hendricks will not be permitted to testify about prior cases, and this part of the motion is due to be granted.

5. *Consent Decrees and "Operation Busy Signal"*

Equifax similarly challenges Hendricks' testimony about the agreements it entered into with state attorneys general in 1992 and the Federal Trade Commission (FTC) in 1994. (*See, e.g.*, Dkt. 113-1 at 4, 18, 22-26). Equifax argues that the agreements are irrelevant and prejudicial. *See, e.g.*, *Price v. Trans Union, LLC*, 839 F. Supp. 2d 785, 812 (E.D. Pa. 2012) (finding probative value of a similar 1992 consent decree "substantially outweighed by the likelihood of jury confusion"). Operation Busy Signal, for example, was an FTC investigation regarding the availability of agents to accept telephone calls from consumers which, Equifax contends, "has nothing to do with the

facts of this case." (Dkt. 113 at 12).

As reasoned in *Anderson,* the proposed testimony "does not require any specialized knowledge, skill, or experience, and thus his expert testimony on these issues would not be particularly helpful to the trier of fact." 2018 WL 1542322, at *7; *see also Valenzuela*, 2015 WL 6811585 at *3 ("It appears that Hendricks merely is recounting the facts of prior cases in which he offered expert witness testimony. No specialized knowledge, skill, or experience is necessary to understand the existence and subjects of these prior cases, consent decrees, and administrative actions."). Hendricks, therefore, will not be permitted to testify on the consent decrees or Operation Busy Signal, and this part of the motion is due to be granted.[2]

III. <u>Phillip Baumann</u>

To obtain a home loan, Rennick attempted to refinance real property Mrs. Rennick inherited from her cousin, John Selvaggio, although title remained in Selvaggio's name. The will was not self-proving because it failed to include language that the witnesses took their oath in the presence of each other. Malverty's expert, Baumann, is a Florida wills, estates, and trusts attorney who will testify about the procedure the Rennicks would have followed to obtain insurable title to the property. (Dkt. 114-8). Baumann also addresses the process for probating a will that is not self-proving. (Id. at 3; Dkt. 114-1 at 31, 54-60).

Equifax takes issue with his conclusions that the Rennicks could transfer title "quickly and easily," and the process "can be accomplished within a week." (Dkt. 114-8 at 3-4). Equifax contends that this opinion is based "solely on his experience with probating other wills for other

---

[2] Similar to testimony of prior cases, this order does not rule on the admissibility of any such evidence, only Hendricks' ability as an expert to testify about the consent decrees and Operation Busy Signal. Courts have found, for example, that the information provides context and is relevant to the question of willfulness. *See, e.g.*, *Drew v. Equifax Info. Servs., LLC*, No. C 07-00726 SI, 2010 WL 5022466, at *6 (N.D. Cal. Dec. 3, 2010).

people" and that "he did not conduct any investigation regarding what would be required to probate [this] will specifically, or if there were any peculiarities in Hernando County at the time that could have delayed the process." (Dkt. 114 at 4; *see also* Dkt. 114-1 at 12-13). Examples of this might include the unavailability of testifying witnesses or a judge's illness. (Dkt. 114 at 4-5). In other words, Equifax argues Baumann's opinion is speculative or unreliable. I disagree. Equifax's objections go to the weight of Baumann's opinions, not their admissibility.

Malverty points out that Baumann has 40 years of experience in probating wills, including in circumstances similar to those presented here. (Dkt. 138 at 7). Indeed, he has confronted situations "where the record title did not reflect the devisee's name, and each time he has probated." (Id. at 9; Dkt. 114-8 at 3). Equifax does not argue that Baumann mischaracterizes the law. And unlike Plaintiff's other expert, Flatow, Baumann is licensed to practice in Florida.

Considering Baumann's background, education and experience, he will be permitted to testify about the content in his expert report, including the length of time the probate process generally takes and the additional steps for probating a will that is not self-proving. This could assist the jury in understanding the probate process and how it may or may not relate to actual damages. Any challenge to the speculative nature of his testimony can be raised on cross-examination. *See Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1345 (11th Cir. 2003) (quoting *Daubert*, 509 U.S. at 596) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). This motion is therefore due to be denied.

IV. <u>Stephen Flatow</u>

Flatow is a New Jersey-licensed attorney and owner of a title insurance agency. (Dkt. 115-4 at 4). He would testify about whether and how the Rennicks could have obtained a loan secured

by the same property. (Id. at 2-3). In his words, when title is in a decedent's name, "lenders often ask that the record title be established by the recording of a deed from the decedent's estate to the beneficiary." (Id. at 3). He further stated that "perfect[ing]" record title "typically takes between two and four weeks," is "usually [done] on the day of settlement," and "would not have been a title impediment to making the loan." (Id.). In his 40 years as a title officer "and having examined many thousands of title abstracts," he has "seen this situation before." (Id.).

Equifax argues that Flatow's opinions are not reliable because he "has no experience issuing title insurance in Florida, appearing in Florida probate court, or probating wills in Florida court, self-proving or not." (Dkt. 115 at 1; *see also* Dkt. 115-5 at 9-11). Malverty responds that Flatow based his opinion on his experience and national standards in the industry. (Dkt. 115-5 at 35). She further observes that Equifax's expert, Martin Awerbach, was unaware of a situation where title in the decedent's name at the time of applying for a mortgage prevented completion of a loan. (Dkt. 122-16 at 3).

Because of his lack of experience as it relates to Florida, Flatow will not be permitted to testify about the process for probating a will in Florida, including the amount of time it would take. *See Davis on Behalf of J.D.D. v. Carroll*, 329 F.R.D. 435, 440 (M.D. Fla. 2018) (excluding testimony of doctor, not licensed in Florida, about obligations under Florida statutes and administrative code provisions). He will, however, be permitted to testify, based on his experiences, about national standards in approving loans and that failure to transfer title prior to settlement or a probate process that takes two to four weeks would not necessarily preclude the loan. Accordingly, the motion is due to be granted in part and denied in part.

**CONCLUSION**

The motion to exclude Dr. Sarkis is **DENIED** as moot. (Dkt. 111). The motions to exclude Hendricks and Flatow are **GRANTED in part** and **DENIED in part**. (Dkt. 113, 115). The motion to exclude Baumann is **DENIED**. (Dkt. 114).

**DONE AND ORDERED** this 28th day of October, 2019.

*/s/ James D. Whittemore*
**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to: Counsel of Record